LENA HOLLY GREENE, WIDOW; JOHN HOLLY, STEPSON; JAMES E. GREENE, SON; AND ISABELLA GREENE, DAUGHTER OF HENRY GREENE, DECEASED (EMPLOYEE), PLAINTIFFS, v. O. R. SPIVEY, NON-INSURER, AND/OR HALSEY HARDWOOD COMPANY, INSURED BY AMERICAN MUTUAL LIABILITY INSURANCE COMPANY; AND/OR MAJOR & LOOMIS LUMBER COMPANY, INSURED BY LIBERTY MUTUAL INSURANCE COMPANY, DEFENDANTS.

(Filed 19 November, 1952.)

**1. Master and Servant § 55d—**

A general exception to the decision and award of the Industrial Commission, without any specific exception to any finding of fact, presents for review in the Superior Court only whether the facts found by the Commission support the decision and award.

**2. Same—**

Where, on appeal from the Industrial Commission, no finding of fact is presented for a ruling by the Superior Court, and only a general exception to the judgment of the Superior Court is entered, the sufficiency of the evidence to support any particular finding may not be raised for the first time upon further appeal to the Supreme Court.

**3. Appeal and Error § 1—**

The function of the Supreme Court is to review proceedings upon appeal for alleged errors, and where the trial court makes no ruling upon a particular question, the Supreme Court may not make any ruling thereon. Constitution of N. C., Art. IV, sec. 8.

**4. Master and Servant § 39b—**

G.S. 97-19 is applicable only to subcontractors as defined by the statute and was enacted for the purpose of protecting employees of irresponsible and uninsured subcontractors and to prevent an employer from evading the Workmen's Compensation Act by subdividing his regular operations, and the statute has no application to an independent contractor whose sole connection with the principal contractor is the sale of goods which the principal contractor purchases in the open market.

**5. Same—Findings held to support conclusion that main contractor was agent of insurer in effecting compensation insurance for independent contractor.**

The findings of the Industrial Commission were to the effect that the employer was engaged in logging operations, buying his own timber, owning his own equipment, and having sole control over his employees, that during a period when he was selling his entire output to the main contractor, the representative of the insurance carrier of the main contractor, with knowledge of all the facts, stated that the employer's compensation insurance could be included in the policy of the main contractor, and that thereafter the employer remitted to the main contractor the stipulated percentage of his total wages and the main contractor remitted same to the insurance carrier. The Commission further found that pursuant to this understanding the executive officer of the main contractor bound insurer as the employer's compensation carrier. Deceased employee was killed in an accident occurring during a period when the employer was selling logs to a person other than the main contractor, but before any cancellation or termination of the insuring agreement or stoppage of payment of premiums by the employer. *Held:* G.S. 97-19 is not applicable, and therefore the fact that the employer had ceased to sell logs to the main contractor prior to the injury could not in itself terminate the coverage, and the findings support the conclusion that coverage was still in effect at the time of the injury, and this result is not affected by the fact that insurer's agent mistakenly assumed that the employer was operating under a contractual relationship with the main contractor within the purview of G.S. 97-19.

**6. Cancellation and Rescission of Instruments § 3—**

A mistake of law, as distinguished from a mistake of fact, does not affect the validity of a contract.

**7. Master and Servant § 42b—**

Insurer admitted coverage and acknowledged receipt of premiums of the employer during the period the employer was selling his total output of logs to the main contractor and also for several weeks during which the employer was selling his logs to another. *Held:* Insurer may not deny liability for an accident occurring during a subsequent period when no logs were being sold or delivered to the main contractor, since a person may not ratify a portion of a contract and reject the rest.

**8. Principal and Agent § 7d—**

A principal may not ratify that part of a contract favorable to him and reject that part which is unfavorable, but by electing to retain the benefits, ratifies the entire transaction.

**9. Master and Servant § 45—**

The jurisdiction of the Industrial Commission to hear and determine all questions arising under the Compensation Act ordinarily includes the right and duty to hear and determine questions of law and fact respecting the existence of insurance coverage and the liability of the insurance carrier, G.S. 97-91, in furtherance of the legislative intent that the provisions of the Act be administered under summary and simple procedure to afford complete relief to parties bound by the Act. G.S. 97-77.

APPEAL by defendant American Mutual Liability Insurance Company from *Williams, J.,* at March Term, 1952, of CHOWAN.

Proceeding under Workmen's Compensation Act for compensation on account of the death of Henry Greene, who died as a result of an injury sustained while felling trees for the defendant O. R. Spivey, whose business was that of timbering and logging. Spivey at times sold logs to the defendant Halsey Hardwood Company, Inc. (hereinafter referred to as Halsey Hardwood), whose compensation insurance carrier was the defendant American Mutual Liability Insurance Company (hereinafter referred to as American Mutual).

This controversy revolves around the question whether American Mutual was also the compensation insurance carrier of Spivey and as such liable for the compensation due on account of the death of his employee, Henry Greene.

In addition to the noncontroversial jurisdictional determinations, these in substance are the pertinent facts found by the Industrial Commission:

1. Henry Greene died on 26 July, 1949, as a direct result of an injury by accident arising out of and in the course of his employment by O. R. Spivey. The accident occurred on 19 July, 1949.

2. Spivey's regular business was that of timbering and logging. He did not operate a sawmill. He purchased and worked standing timber and sold the logs in the open market wherever he could at the prevailing price. He owned his own equipment, hired, fired, and paid his own em-

ployees, worked or stopped when and as he saw fit, and kept his own records.

3. On 14 January, 1949, and for some time prior thereto, the defendant Spivey had been selling his entire output of logs to the defendant Halsey Hardwood. However, Halsey Hardwood had no voice in or control over the management of Spivey's operations in any way or manner, and Spivey was not an employee or subcontractor of Halsey Hardwood. Spivey continued to deliver his entire output of logs to Halsey Hardwood "until sometime in March" (1949) "when Halsey Hardwood, finding itself with so many logs on hand that there was danger of losing some by rotting, told Spivey that they would need no more logs from him until further notice." He then ceased delivering logs to Halsey Hardwood until May, 1949, when he sold it "several more loads of logs." In the interim he had been delivering his logs to Major & Loomis Lumber Company and others; that "after 7 May, 1949, he delivered no more logs to Halsey Hardwood until after September, 1949." At the time of Henry Greene's injury on 19 July, 1949, Spivey was selling his logs to Major & Loomis Lumber Company. This company had no voice in or control over Spivey's operations.

4. The relationship of employer and employee did not exist between the deceased Henry Greene and Halsey Hardwood or between the deceased employee Henry Greene and Major & Loomis Lumber Company. Henry Greene was the employee of O. R. Spivey only.

5. Prior to 14 January, 1949, Halsey Hardwood had been carrying workmen's compensation insurance with an insurance company not revealed by the record. Leroy A. Lanier, Branch Manager of American Mutual, had been soliciting Halsey Hardwood's coverage, and on 14 January, 1949, American Mutual issued to Halsey Hardwood a policy of workmen's compensation insurance on what is known as a "quarterly audit basis." Under this plan, the assured pays a deposit premium equal to 40% of the estimated annual premium at the time the policy is written and becomes effective. Quarterly thereafter, either the assured or a representative of the company audits the payroll records of the assured for such period, and the earned premium based upon such quarterly audit is paid quarterly by the assured. Upon completion of the fourth and final quarterly audit the actual earned premium for the year is paid. Any excess of earned premium not paid in quarterly premiums is either charged against the deposit premium or paid by the assured. The balance of the deposit premium, if any, is then either returned to the assured or credited on the next policy year, if the policy is renewed. The insurance carrier retains the 40% deposit premium throughout the policy year or until cancellation or rescission of the policy. Any of the audits herein mentioned may be made either by the assured or by the insurance carrier,

and this plan was followed by Halsey Hardwood and American Mutual under the policy issued 14 January, 1949.

6. When Branch Sales Manager Lanier negotiated the issuance of the insurance policy with R. P. Baer and C. T. Griffin, executive officers of Halsey Hardwood, Lanier was informed of these facts: that Halsey Hardwood was conducting its own logging operations by subcontractors who were cutting timber owned by the company; that it was also purchasing logs from an independent contractor (Spivey); that it was not known whether Spivey had his own workmen's compensation insurance, but if he did not have it Halsey Hardwood wanted him covered under its policy; that Lanier (after phoning the Atlanta office) advised the executive officers of Halsey Hardwood with whom he was dealing "that this could be done," and requested Mr. Baer, chief executive officer of Halsey Hardwood, to ascertain whether Spivey had his own insurance or not. Lanier further instructed Baer and Griffin (the latter being General Manager of Halsey Hardwood) "that in the event Spivey was to be covered under the Halsey policy, his payroll should be reported with that of Halsey Hardwood and premiums paid accordingly." As to this, the Commission found these specific facts: (1) "It was agreed between Mr. Baer and Mr. Lanier, agent for American Mutual, that if O. R. Spivey did not have insurance on his men they were to be covered by the policy issued to Halsey Hardwood. No reference was made as to whether or not Halsey Hardwood bought all of the logs produced by O. R. Spivey or only part of them." (2) "Mr. Baer, an official of Halsey Hardwood, was the agent of American Mutual for the purpose of ascertaining whether or not O. R. Spivey was carrying compensation insurance on his employees and, if not, to effect such insurance by causing the said Spivey to submit his payroll each Friday and pay the premium thereon to Halsey Hardwood Company, who in turn would include the same in its report and payment to American Mutual."

7. Thereafter Baer ascertained from Spivey that he did not have workmen's compensation insurance, but wished to carry it. Baer then informed Spivey he could come under the Halsey Hardwood policy by paying premiums based on 5.5% of his payroll, which should be reported to Halsey Hardwood weekly. Beginning the first week in February, 1949, Spivey reported his payroll to Miss Edna Snell, bookkeeper for Halsey Hardwood, each Friday afternoon and paid 5.5% of his payroll each week as a premium for the coverage of his employees, and Spivey continued to make such payments until after the death of Henry Greene on 26 July, 1949. As to this, the Industrial Commission specifically found as a fact that "premiums were paid by O. R. Spivey to Halsey Hardwood in accordance with the arrangement detailed until after the

death of Henry Greene. Halsey Hardwood remitted the said premiums along with his own premiums to American Mutual."

8. After the death of Henry Greene, J. C. Taylor, an adjuster for American Mutual, made an investigation, and as a result thereof instructed the representatives of Halsey Hardwood not to accept any further premiums from Spivey; and no further premium payments were accepted thereafter by Halsey Hardwood from Spivey.

9. The audit for the first quarter ending 14 April, 1949, was prepared by G. E. Wiles, a payroll auditor for American Mutual. By inadvertence on the part of Miss Edna Snell, bookkeeper for Halsey Hardwood, the payroll of O. R. Spivey was not reported in this quarterly audit. However, Spivey made his weekly reports and weekly payments to Miss Snell for Halsey Hardwood. The second quarterly audit was prepared by Miss Snell. This audit covered the period from 14 April to 14 July, 1949. This audit was made after the death of Henry Greene. The erroneous omission of Spivey's payroll from the first quarterly audit was later pointed out to Wiles by Miss Snell. Wiles separated Spivey's payroll from Halsey Hardwood's payroll on the audit made in October, 1949. He drew the audit to include Spivey's payroll through 7 May, 1949, the date of the last delivery of logs to Halsey Hardwood by Spivey prior to the death of Henry Greene. Wiles had been instructed by his principal, American Mutual, to so separate Spivey's payroll from Halsey Hardwood's payroll in making the audit.

Upon these findings, and others not pertinent to this appeal, the Industrial Commission concluded in substance (1) that on and prior to 19 July, 1949, Henry Greene was an employee of O. R. Spivey and that both of them were subject to and bound by the provisions of the Workmen's Compensation Act, and (2) that American Mutual was Spivey's compensation insurance carrier and was on the risk at the time of the injury and death of his employee, Henry Greene, and is liable for payment of the compensation due on account thereof. Thereupon an award was made in favor of the claimants, Lena Holly Greene, widow, and John Holly, her son, with direction that the award be paid by American Mutual as Spivey's insurance carrier. The proceeding was dismissed as against the defendants Halsey Hardwood and Major & Loomis Lumber Company and the latter's insurance carrier, Liberty Mutual Insurance Company.

From the decision and award of the Commission, American Mutual appealed to the Superior Court by giving notice of appeal as follows:

"Now comes the American Mutual Liability Insurance Company, one of the defendants in the above proceedings, and give this notice of appeal to the Superior Court of Chowan County, said County being the County in which the accident occurred, for errors of law in the review and award made by the Full Commission on the 24th day of July 1951. The appel-

lant prays the Commission that it certify and return to said court a certified transcript and record of this proceedings as provided by law."

However, no specific exceptions or assignments of error appear to have been filed with or included in the record on appeal to the Superior Court.

In the Superior Court, the presiding judge entered judgment adjudging "that the findings of fact and conclusions of law of Hearing Commissioner Scott and the Full North Carolina Industrial Commission and award made thereon are hereby in all respects ratified, approved and adopted by the court, and that the plaintiff recover the award as set out in the judgment of the said Industrial Commission."

From the judgment so entered, the defendant American Mutual excepted and appealed to this Court.

*I. Weisner Farmer* for *American Mutual Liability Insurance Company, defendant, appellant.*

*Marvin Wilson* for *O. R. Spivey, defendant, appellee.*

JOHNSON, J.   American Mutual's appeal from the Industrial Commission to the Superior Court, being unsupported by any specific exception to any finding of fact of the Commission, amounted to nothing more than a general exception to the decision and award of the Commission, and was insufficient to challenge the sufficiency of the evidence to support the findings of fact of the Commission or any one of them.   The appeal carried up for review in the Superior Court the single question whether the facts found by the Commission support the decision and award.   *Parsons v. Swift & Co.,* 234 N.C. 580, 68 S.E. 2d 296; *Rader v. Coach Co.,* 225 N.C. 537, 35 S.E. 2d 609.   See also *In re Sams, ante,* 228, 72 S.E. 2d 421. And in turn, the general exception to the judgment signed by Judge Williams brings here for review the single question whether the facts found support the decision and award.   *Rader v. Coach Co., supra; Brown v. Truck Lines,* 227 N.C. 65, 40 S.E. 2d 476; *Fox v. Mills, Inc.,* 225 N.C. 580, 35 S.E. 2d 869.   See also *Burnsville v. Boone,* 231 N.C. 577, 58 S.E. 2d 351, and cases there cited.

On the record as presented it has not been made to appear that Judge Williams either ruled upon, or was required to rule upon, any specific finding of fact of the Industrial Commission.   This being so, it is too late for American Mutual to attempt to challenge for the first time in this Court (by assignments of error directed to specific findings of the Industrial Commission), the sufficiency of the evidence to support these crucial findings of the Commission: (1) that R. P. Baer, executive officer of Halsey Hardwood, was constituted the agent of American Mutual with power and direction to effect the insurance coverage of Spivey; (2) that Baer brought about the coverage of Spivey; (3) that the premiums were

paid by Spivey to Halsey Hardwood in accordance with the instructions given him; and (4) that Halsey Hardwood in turn remitted the premiums along with its own to American Mutual. This is an appellate court. Our function, under the Constitution, is to review alleged errors and rulings of the trial court, and unless and until it is shown that a trial court ruled on a particular question, it is not given for us to make specific rulings thereon. Article IV, Section 8, Constitution of North Carolina; *Grandy v. Walker*, 234 N.C. 734, 68 S.E. 2d 807; *Leggett v. College*, 234 N.C. 595, 68 S.E. 2d 263; *Woodard v. Clark*, 234 N.C. 215, 66 S.E. 2d 888.

It thus appears that the decisive question presented by this appeal is: Are the facts found by the Industrial Commission sufficient to support the adjudication that American Mutual Liability Insurance Company was the compensation carrier of O. R. Spivey, employer of the deceased Henry Greene, at the time of his fatal injury, and liable for payment of the compensation due on account of Greene's death.

As to this, the Commission found as a fact that R. P. Baer, an official of Halsey Hardwood, was the agent of American Mutual with power and direction to effect the compensation insurance coverage of Spivey. This is conceded by American Mutual. It is also conceded that Baer, acting on this authorization, effected Spivey's coverage on or about 1 February, 1949, and that for a time thereafter Spivey's operations were effectively covered.

However, American Mutual takes the position that its contract with Spivey furnished coverage of his workers only while and so long as he was selling and delivering logs to Halsey Hardwood.

Thus, American Mutual urges that when Spivey delivered his last load of logs to Halsey Hardwood on 7 May, 1949, his insurance coverage thereupon ceased and terminated, thus freeing this company from liability for the fatal accident suffered by Greene on 19 July, 1949.

This contention that Spivey's insurance coverage was conditional and terminable, as urged by American Mutual, is predicated upon the theory that the insuring agreement was made by the parties in contemplation of the provisions of G.S. 97-19 as amended. This statute provides in pertinent part as follows:

"Any principal contractor, intermediate contractor, or subcontractor who shall sublet any contract for the performance of any work without requiring from such subcontractor or obtaining from the Industrial Commission a certificate, issued by the Industrial Commission, stating that such subcontractor has complied with Sec. 97-93 hereof, shall be liable, irrespective of whether such subcontractor has regularly in service less than five employees in the same business within this State, to the same extent as such subcontractor would be if he had accepted the provisions of this article for the payment of compensation and other benefits under

this article on account of the injury or death of any employee of such subcontractor, due to an accident arising out of and in the course of the performance of the work covered by such subcontract. . . .

"The principal or owner may insure any or all of his contractors and their employees in a blanket policy, and when so insured such contractor's employees will be entitled to compensation benefits regardless of whether the relationship of employer and employee exists between the principal and the contractor."

Here, American Mutual takes the position that Spivey's insurance coverage rested solely upon, and was dependent on the continued existence of, an insurable interest which it asserts Halsey Hardwood had in Spivey's operations by reason of the relation of principal contractor and subcontractor between Halsey Hardwood and Spivey within the meaning of G.S. 97-19. Therefore, American Mutual urges that the stoppage of Spivey's log deliveries to Halsey Hardwood, *ipso facto,* terminated Spivey's insurance coverage.

The manifest purpose of this statute, enacted as an amendment to the original Workmen's Compensation Act, is to protect employees of irresponsible and uninsured subcontractors by imposing ultimate liability on principal contractors, intermediate contractors, or subcontractors, who, presumably being financially responsible, have it within their power, in choosing subcontractors, to pass upon their financial responsibility and insist upon appropriate compensation protection for their workers. It is also the obvious aim of the statute to forestall evasion of the Workmen's Compensation Act by those who might be tempted to subdivide their regular operations with the workers, thus relegating them for compensation protection to small subcontractors, who fail to carry, or if small enough, may not even be required to carry, compensation insurance. *Withers v. Black,* 230 N.C. 428, p. 434, 53 S.E. 2d 668. Larson, Workmen's Compensation Law, Vol. 1, Sec. 49.11, p. 724; 58 Am. Jur., Workmen's Compensation, Sec. 139. See also Annotations: 58 A.L.R. 872; 105 A.L.R. 581.

The statute at hand has no application to the relationship between Halsey Hardwood and Spivey as shown by this record. Here, there is neither evidence nor finding of fact that Halsey Hardwood at any time sublet any part of its logging operations or other work to Spivey, nor made any contract with him for the performance of work of any kind. All the evidence tends to show, and the facts are so found by the Commission, that Spivey was cutting timber which he owned absolutely under direct purchase from the owner of the stumpage. Halsey Hardwood had no contractual rights of any kind in the stumpage. Spivey owned his own logging equipment, conducted his own logging operations and sold his logs in the open market. The firms to whom he sold the logs had no

control or right of control over his mode of logging operations or disposal of logs. On this record Spivey at no time stood in the position of subcontractor to Halsey Hardwood or any other firm to whom he sold his logs, nor was Halsey Hardwood ever at any time liable, under G.S. 97-19 or any other section of the Workmen's Compensation Act, for any injuries that may have been sustained by Spivey's employees.

It must be kept in mind that G.S. 97-19 is not applicable to an independent contractor (*Hayes v. Elon College,* 224 N.C. 11, 29 S.E. 2d 137), as distinguished from a subcontractor of the class designated by the statute. *Beach v. McLean,* 219 N.C. 521, 14 S.E. 2d 515; *Evans v. Lumber Co.,* 232 N.C. 111, 59 S.E. 2d 612. And all the more is it so that the statute does not apply to an independent employer who, as in the case of Spivey, produces or gets out raw materials of his own, like logs, and sells them in the open market to a processor-purchaser like Halsey Hardwood who has no control whatsoever over the operations of the independent employer.

It follows, then, that since the relationship of principal contractor and subcontractor never existed between Halsey Hardwood and Spivey within the meaning of G.S. 97-19, Spivey's insurance coverage may not be treated as having rested in its inception upon that relationship; and if this be so, it necessarily follows that proof of the nonexistence of that relationship at some subsequent time does not, *ipso facto,* show a termination of the insurance coverage.

This record discloses that Lanier, agent of American Mutual, was fully apprised of the true factual relationship between Halsey Hardwood and Spivey before Spivey's coverage was effected. Therefore, if it be conceded that Lanier was mistaken in assuming that Spivey was operating under a contractual relation with Halsey Hardwood which brought him within the purview of G.S. 97-19 (though this is not shown by the record), even so, such was nothing more than an erroneous conclusion as to the legal effect of known facts. And this is a mistake of law and not of fact, and the rule is that ordinarily a mistake of law, as distinguished from a mistake of fact, does not affect the validity of a contract. *Foulkes v. Foulkes,* 55 N.C. 260; *Bledsoe v. Nixon,* 68 N.C. 521. See also 12 Am. Jur., Contracts, Sec. 140, p. 634.

It is manifest, therefore, that the rights of American Mutual and Spivey must be determined without reference to G.S. 97-19, wholly and solely upon the basis of the contractual relation between them as established by the findings of fact of the Industrial Commission. The findings of the Commission show that Baer, acting as agent of American Mutual, effectively bound that company as Spivey's compensation insurance carrier, and no cancellation or termination of the insuring agreement or stoppage of the payment of premiums has been made to appear. On the

contrary, it affirmatively appears that the premiums were paid weekly by Spivey until after the deceased Henry Greene sustained his fatal injury. These findings support the conclusion and adjudication that American Mutual was Spivey's compensation insurance carrier and as such is liable for payment of the compensation due by reason of the death of Henry Greene.

Besides, it is noted that American Mutual admits its coverage of Spivey in the first instance. The period of admitted coverage extends from 1 February through 7 May, 1949. This includes a period of several weeks in March and April when no logs were being delivered to Halsey Hardwood. Following this stoppage there was a period of deliveries extending over a few days in May and ending 7 May. After this, Spivey again resumed deliveries in September, 1949. Meanwhile, Henry Greene was injured 19 July, 1949. Thus, by admitting coverage and acknowledging receipt of premiums and electing to keep them for the period of several weeks in March and April when no logs were being delivered to Halsey Hardwood, American Mutual attempts to ratify a portion of the insuring agreement and reject the rest. This, in no event, may it do. Ordinarily an insurance company may not ratify that part of an unauthorized contract made by an agent which is favorable to it and reject the rest. It must ratify or reject it as a whole. 44 C.J.S., Insurance, Sec. 273, p. 1090. The rule is that ratification extends to the entire transaction. 2 Am. Jur., Agency, Sec. 223, p. 177. Therefore, if it should be conceded *arguendo* that the contract as made by Mr. Baer as agent of American Mutual was ineffectual for any reason to cover Spivey's operations after he stopped selling and delivering logs to Halsey Hardwood on 7 May, 1949, even so, it would seem that upon the record as here presented American Mutual ratified the contract by its election to retain premiums paid by Spivey during an earlier period while he was not delivering logs to Halsey Hardwood.

We have not overlooked the appellant's challenge to the jurisdiction of the Industrial Commission. As to this, appellant urges that the court, and not the Industrial Commission, is the proper forum for the adjudication of the question of liability, if any, of American Mutual.

The appellant's position is untenable. The Commission is specifically vested by statute with jurisdiction to hear "all questions arising under" the Compensation Act. G.S. 97-91. This jurisdiction under the statute ordinarily includes the right and duty to hear and determine questions of fact and law respecting the existence of insurance coverage and liability of the insurance carrier. See 58 Am. Jur., Workmen's Compensation, Sec. 572; Annotation, 127 A.L.R. 476, 481; 71 C.J., p. 916.

It was the legislative intent that the Industrial Commission should administer the provisions of the Workmen's Compensation Act under

summary and simple procedure, distinctly its own, so as to furnish speedy, substantial, and complete relief to parties bound by the Act. G.S. 97-77 *et seq.* See also *Worley v. Pipes,* 229 N.C. 465, 50 S.E. 2d 504; *Lee v. Enka Corp.,* 212 N.C. 455, 193 S.E. 809; *Conrad v. Foundry Co.,* 198 N.C. 723, 153 S.E. 266.

This record impels the conclusion that the Industrial Commission had jurisdiction to hear and determine the question of insurance coverage.

It follows from what we have said that the judgment below will be

Affirmed.