***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Griffin and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. Plaintiff sustained an alleged injury by accident on December 1, 2005.
2. The following were admitted into evidence at the hearing before the Deputy Commissioner:
 a. Stipulated #1, Pre-Trial Agreement.
 b. Stipulated #2, Medical Records.
 c. Plaintiff's exhibits #1-13, including pay ledger records, documents regarding plaintiff's April 5, 2005 automobile accident, documents regarding a criminal judgment, quarterly payroll reports for Maple View Farm, Inc. and Maple View Milk Co., schedules, tax returns, Maple View Farm, Inc. profit and loss worksheet, and W-2 form for Clyde Mitchell.
 d. Defendant-Maple View Milk Co.'s exhibits #1-6, including plaintiff's discovery responses, photographs, medical records, affidavit, and W-2 form for plaintiff.
3. The issues before the Full Commission are whether Maple View Farm, Inc. is subject to the Act; whether plaintiff is an employee of either Maple View Farm, Inc. and/or Maple View Milk Co.; whether N.C. Gen. Stat. § 97-19 applies to Maple View Farm, Inc. and/or Maple View Milk Co.; and whether plaintiff is entitled to any benefits as a result of the alleged injury on December 2, 2005.
 ***********
Based upon the competent evidence of record herein, the Full Commission makes the following: *Page 3 
 FINDINGS OF FACTS
1. On December 1, 2005, the date of plaintiff's alleged accident, plaintiff worked for Maple View Farm, Inc. (hereinafter referred to as "Farm.") The Farm was founded prior to the mid 1990's and was initially owned by Robert Nutter. Prior to 1996, Robert Nutter sold 50% interest in the Farm to Russell Seibert, who manages the Farm operation. The business of the Farm is to produce feed including hay and corn for cows, to milk the cows and to sell raw milk produced from the cows.
2. In 1996, Maple View Milk Company (hereinafter "Milk Company") was created. Mr. Seibert and Roger Nutter, Robert Nutter's son, each own a 50% share of the Milk Company. The business of the Milk Company is to take raw milk, pasteurize it, bottle it, and sell and deliver the processed milk to various customers, including restaurants and grocery stores. The Milk Company also produces an ice cream mix and dairy spread. The Milk Company receives weekly orders from its customers who request that varying amounts of milk be delivered to their businesses. Its customers include Kroger, Whole Foods, Harris Teeter, Lowe's, Weaver Street Market, and several restaurants and smaller vendors. The Milk Company uses its own trucks to deliver the processed milk directly to its customers. The Milk Company owns all equipment used to process the milk including, but not limited to, a pasteurizer, homogenizer, separator, milk tanks, bottle fillers, washers and caps. The Farm's various customers have no right of control over the operations or production levels of the Milk Company.
3. As of the alleged injury date of December 1, 2005, the Farm sold all of its raw milk produced by its cows to the Milk Company. The milk is piped from the Farm property to the Milk Company via an underground pipe. Prior to the formation of the Milk Company, the Farm sold its raw milk to a dairy cooperative. *Page 4 
4. Testimony from Roger Nutter, Russell Seibert and Stephen Stuart, CPA for both companies, showed that the Farm and the Milk Company are separate entities and businesses. Although Mr. Seibert owns 50% of each of the companies, Robert Nutter owns the other 50% of the Farm and Roger Nutter owns the other 50% of the Milk Company. The two entities keep separate books; engage separate bookkeepers; have separate bank accounts, employees, employee payrolls, and equipment; have different addresses; have separate Federal tax ID numbers and file separate Federal and State tax returns. There is no commingling of any assets or monies by the two entities.
5. There is no written contract between the Milk Company and the Farm. The Farm is not contractually obligated to sell its milk exclusively to the Milk Company. If the Farm had chosen to do so, the Farm could have sold any amount of milk to a customer other than the Milk Company. Likewise, the Milk Company is not contractually obligated to buy all of the raw milk produced by the Farm.
6. Stephen Stuart, the CPA for both companies, testified that he had no knowledge of any contract between the Milk Company and the Farm; that he would probably have known had there been any contract between the two entities because such a contract would have affected the way the companies reported their incomes; and that no evidence of such a contract appeared in the tax returns which he prepared for both companies. Mr. Stuart further testified that the way the two companies were set up was not unusual and that there was nothing to indicate that they were not truly separate entities.
7. Further, there are no contracts between the Milk Company and any of its customers. The Milk Company is in the business of processing milk. The Milk Company is not a party to a contract with any entity wherein the Milk Company agreed to perform a piece of *Page 5 
work. Although Roger Nutter testified that one customer, Harris Teeter, requested that the Milk Company provide a certificate of insurance, the Full Commission finds that this fact standing alone fails to prove that any contract existed between the Milk Company and Harris Teeter.
8. The relationship between the Farm and the Milk Company is that of vendor and vendee. The relationship between the Milk Company and the groceries and restaurants who are its customers is that of vendor and vendees.
9. On December 2, 2005, plaintiff was an employee of the Farm. Plaintiff testified that she performed only farm activities and plaintiff admitted that she had never worked for the Milk Company in any capacity. Plaintiff alleges that she injured her back on December 2, 2005.
10. Plaintiff filed a claim for benefits against the Farm and the Milk Company. Her claim against the Farm was based on an employee-employer relationship. Plaintiff filed a claim against the Milk Company alleging that the Farm was a subcontractor of the Milk Company and that the Milk Company, as the general contractor, should be held liable for the claim since the Farm did not have workers' compensation coverage.
11. On December 2, 2005, the Farm had no workers' compensation coverage. On December 2, 2005, the Milk Company did have workers' compensation coverage for Milk Company employees through a policy with The Hartford Insurance Company.
12. At the close of the hearing before the Deputy Commissioner, the Farm, by and through its counsel of record, made a motion to dismiss plaintiff's claim against the Farm since all evidence revealed that the Farm had never regularly employed ten nonseasonal employees and that therefore they were not required to have workers' compensation coverage pursuant to N.C. Gen. Stat. § 97-13(b).
13. The Milk Company made a motion to dismiss based on evidence presented that *Page 6 
plaintiff was not a Milk Company employee on December 2, 2005 and that there was no evidence that a contract existed between the Farm and the Milk Company or between the Milk Company and its customers which would make the Milk Company liable for the claim as a general contractor under N.C. Gen. Stat. § 97-19.
13. The Deputy Commissioner's Opinion and Award filed on February 13, 2007, dismissed both defendants from the claim. Plaintiff appealed.
14. The Full Commission finds by the greater weight of the evidence that on December 2, 2005, plaintiff was an employee of the Farm. The Full Commission further finds that the Farm came within the exceptions listed in N.C. Gen. Stat. § 97-13(b) in that the Farm has always and specifically on December 2, 2005, had fewer than ten full-time nonseasonal farm laborers who were regular employees. Plaintiff never was an employee of the Milk Company.
15. The Full Commission further finds by the greater weight of the evidence that there was no contract, of any kind, between the Milk Company and its customers and that, therefore, there was no contract in existence for the performance of any work, which was then sublet to the Farm. Further, the Full Commission finds that even if there were a contract between the Milk Company and the Farm, there is insufficient evidence to prove by the greater weight that by virtue of any such contract the Milk Company sublet the performance of any work which it was legally and contractually obligated to perform for another.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following: *Page 7 
 CONCLUSIONS OF LAW
1. Employment, as it is defined in the North Carolina Workers' Compensation Act, does not include agriculture and domestic services, "unless 10 or more full-time nonseasonal agricultural workers are regularly employed by the employer." N.C. Gen. Stat. § 97-2(1). In the case at bar, the Farm was engaged in agricultural operations and regularly employed fewer than ten full-time nonseasonal employees. Plaintiff's job duties of feeding and birthing calves and cleaning stalls, place her in the category of a farm laborer. Thus, the Farm does not fall within the jurisdiction of the Act and is not liable for injuries plaintiff allegedly sustained on December 1, 2005. N.C. Gen. Stat. §§ 97-2(1); 97-13(b).
2. The Milk Company does fall within the jurisdiction of the Workers' Compensation Act; however, plaintiff was not and has never been an employee of the Milk Company. N.C. Gen. Stat. §§ 97-2(1); 97-2(2).
3. Plaintiff argues that the relationship between the Milk Company and the Farm was that of a contractor/subcontractor, and that the provisions of N.C. Gen. Stat. § 97-19 apply to impute liability to the Milk Company. N.C. Gen. Stat. § 91-19 states:
 Any principal contractor, intermediate contractor, or subcontractor who shall sublet any contract for the performance of any work without requiring from such subcontractor or obtaining from the Industrial Commission a certificate, issued by a workers' compensation insurance carrier, or a certificate of compliance issued by the Department of Insurance to a self-insured subcontractor, stating that such subcontractor has complied with G.S. 97-93 hereof, shall be liable, irrespective of whether such subcontractor has regularly in service fewer than three employees in the same business within this State, to the same extent as such subcontractor would be if he were subject to the provisions of this Article for the payment of compensation and other benefits under this Article on account of the injury or death of any employee of such subcontractor due to an accident arising out of and in the course of the performance of the work covered by such subcontract. *Page 8 
4. The North Carolina Court of Appeals stated in Cook v.Norvell-Mackorell Real Estate Co., 99 N.C. App. 307, 310,392 S.E.2d 758, 760 (1990): "G.S. § 97-19, by its own terms, cannot apply unless there is first a contract for the performance of work which is then sublet." See also, Purser v. Heatherlin Properties, 137 N.C. App. 332,527 S.E.2d 689, disc. review denied, 352 N.C. 676, 545 S.E.2d 428
(2000). N.C. Gen. Stat. § 97-19 has no application to a party which has not legally undertaken to perform a certain task for another which that party then in turn sublets to a subcontractor. See, e.g., Evans v.Lumber Co., 232 N.C. 111, 59 S.E.2d 612 (1950); Mayhew v. Howell,102 N.C. App. 269, 401 S.E.2d 831, aff'd per curiam, 330 N.C. 113,408 S.E.2d 853 (1991). In Greene v. Spivey, 236 N.C. 435, 73 S.E.2d 488
(1952), the Supreme Court held that a company that owns its own equipment, conducts its own business and sells its product to another company that has no right of control over its operations does not create a general contractor/subcontractor relationship under N.C. Gen. Stat. § 97-19.
5. In the case at bar, N.C. Gen. Stat. § 97-19 is inapplicable. The evidence fails to show by the greater weight that the Milk Company was under contract with any entity for the performance of any work. The absence of any original contract obligating the Milk Company to perform a specific piece of work is dispositive of the inapplicability of N.C. Gen. Stat. § 97-19. As such, the Milk Company is not a principal or original contractor within the meaning of N.C. Gen. Stat. § 97-19.
6. Assuming arguendo that there is a contract between the Farm and the Milk Company for the provision of raw milk, the existence of such a contract does not invoke N.C. Gen. Stat. § 97-19. The Farm does not provide any certain service or work which the Milk Company has legally contracted to perform for another and has not "sublet" any part of such a contract to the Farm. The relationship between the Farm and the Milk Company is that of *Page 9 
vendor/vendee, as the Farm is a vendor of raw milk to the Milk Company, the vendee. Greene v. Spivey, supra.
7. The Milk Company was not, by definition, a general contractor pursuant to N.C. Gen. Stat. § 97-19 and thus cannot be held liable for plaintiff's claim. The greater weight of the evidence shows that the Milk Company did not employ plaintiff and that it was not a contractor with the Farm. Therefore, the Milk Company is not liable for injuries sustained by plaintiff as a result of the alleged injury on December 1, 2005. N.C. Gen. Stat. § 97-19.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claims, filed against both the Farm and the Milk Company, are hereby dismissed.
2. Each party shall bear their own costs.
This 15 day of August, 2007.
 S/_________________________
 LAURA KRANIFELD MAVRETIC
 COMMISSIONER
CONCURRING:
S/________________________ BUCK LATTIMORE CHAIRMAN
S/________________________ DIANNE C. SELLERS COMMISSIONER *Page 1