73 S.E.2d 488 (1952)
236 N.C. 435
GREENE et al.
v.
SPIVEY et al.
No. 23.
Supreme Court of North Carolina.
November 19, 1952.
*492 I. Weisner Farmer, Raleigh, for American Mut. Liability Ins. Co., defendant, appellant.
Marvin Wilson, Edenton, for O. R. Spivey, defendant, appellee.
JOHNSON, Justice.
American Mutual's appeal from the Industrial Commission to the Superior Court, being unsupported by any specific exception to any finding of fact of the Commission, amounted to nothing more than a general exception to the decision and award of the commission, and was insufficient to challenge the sufficiency of the evidence to support the findings of fact of the Commission or any one of them. The appeal carried up for review in the Superior Court the single question whether the facts found by the Commission support the decision and award. Parsons v. Swift & Co., 234 N.C. 580, 68 S.E.2d 296; Rader v. Queen City Coach Co., 225 N.C. 537, 35 S.E.2d 609. See also In re Sams, 236 N.C. 228, 72 S.E. *493 2d 421. And in turn, the general exception to the judgment signed by Judge Williams brings here for review the single question whether the facts found support the decision and award. Rader v. Queen City Coach Co., supra; Brown v. L. H. Bottoms Truck Lines, 227 N.C. 65, 40 S.E.2d 476; Fox v. Cramerton Mills, Inc., 225 N.C. 580, 35 S.E.2d 869. See also Town of Burnsville v. Boone, 231 N.C. 577, 58 S.E.2d 351, and cases there cited.
On the record as presented it has not been made to appear that Judge Williams either ruled upon, or was required to rule upon, any specific finding of fact of the Industrial Commission. This being so, it is too late for American Mutual to attempt to challenge for the first time in this Court (by assignments of error directed to specific findings of the Industrial Commission) the sufficiency of the evidence to support these crucial findings of the Commission: (1) that R. P. Baer, executive officer of Halsey Hardwood, was constituted the agent of American Mutual with power and direction to effect the insurance coverage of Spivey; (2) that Baer brought about the coverage of Spivey; (3) that the premiums were paid by Spivey to Halsey Hardwood in accordance with the instructions given him; and (4) that Halsey Hardwood in turn remitted the premimums along with its own to American Mutual. This is an appellate court. Our function, under the Constitution, is to review alleged errors and rulings of the trial court, and unless and until it is shown that a trial court ruled on a particular question, it is not given for us to make specific rulings thereon. Article IV, Section 8, Constitution of North Carolina; Grandy v. Walker, 234 N.C. 734, 68 S.E.2d 807; Leggett v. Southeastern Peoples College, 234 N.C. 595, 68 S.E.2d 263; Woodard v. Clark, 234 N.C. 215, 66 S.E.2d 888.
It thus appears that the decisive question presented by this appeal is: Are the facts found by the Industrial Commission sufficient to support the adjudication that American Mutual Liability Insurance Company was the compensation carrier of O. R. Spivey, employer of the deceased Henry Greene, at the time of his fatal injury, and liable for payment of the compensation due on account of Greene's death?
As to this, the Commission found as a fact that R. P. Baer, an official of Halsey Hardwood, was the agent of American Mutual with power and direction to effect the compensation insurance coverage of Spivey. This is conceded by American Mutual. It is also conceded that Baer, acting on this authorization, effected Spivey's coverage on or about 1 February, 1949, and that for a time thereafter Spivey's operations were effectively covered.
However, American Mutual takes the position that its contract with Spivey furnished coverage of his workers only while and so long as he was selling and delivering logs to Halsey Hardwood.
Thus, American Mutual urges that when Spivey delivered his last load of logs to Halsey Hardwood on 7 May, 1949, his insurance coverage thereupon ceased and terminated, thus freeing this company from liability for the fatal accident suffered by Greene on 19 July, 1949.
This contention that Spivey's insurance coverage was conditional and terminable, as urged by American Mutual, is predicated upon the theory that the insuring agreement was made by the parties in contemplation of the provisions of G.S. § 97-19 as amended. This statute provides in pertinent part as follows:
"Any principal contractor, intermediate contractor, or subcontractor who shall sublet any contract for the performance of any work without requiring from such subcontractor or obtaining from the Industrial Commission a certificate, issued by the Industrial Commission, stating that such subcontractor has complied with § 97-93 hereof, shall be liable, irrespective of whether such subcontractor has regularly in service less than five employees in the same business within this State, to the same extent as such subcontractor would be if he had accepted the provisions of this article for the payment of compensation and other *494 benefits under this article on account of the injury or death of any employee of such subcontractor, due to an accident arising out of and in the course of the performance of the work covered by such subcontract. * * *
"The principal or owner may insure any or all of his contractors and their employees in a blanket policy, and when so insured such contractor's employees will be entitled to compensation benefits regardless of whether the relationship of employer and employee exists between the principal and the contractor."
Here, American Mutual takes the position that Spivey's insurance coverage rested solely upon, and was dependent on the continued existence of, an insurable interest which it asserts Halsey Hardwood had in Spivey's operations by reason of the relation of principal contractor and subcontractor between Halsey Hardwood and Spivey within the meaning of G.S. § 97-19. Therefore, American Mutual urges that the stoppage of Spivey's log deliveries to Halsey Hardwood, ipso facto, terminated Spivey's insurance coverage.
The manifest purpose of this statute, enacted as an amendment to the original Workmen's Compensation Act, is to protect employees of irresponsible and uninsured subcontractors by imposing ultimate liability on principal contractors, intermediate contractors, or subcontractors, who, presumably being financially responsible, have it within their power, in choosing subcontractors, to pass upon their financial responsibility and insist upon appropriate compensation protection for their workers. It is also the obvious aim of the statute to forestall evasion of the Workmen's Compensation Act by those who might be tempted to subdivide their regular operations with the workers, thus relegating them for compensation protective to small subcontractors, who fail to carry, or if small enough, may not even be required to carry, compensation insurance. Withers v. Black, 230 N.C. 428, at page 434, 53 S.E.2d 668. Lawson, Workmen's Compensation Law, Vol. 1, Sec. 49.11, p. 724; 58 Am. Jur., Workmen's Compensation, Sec. 139. See also Annotations: 58 A.L.R. 872; 105 A.L.R. 581.
The statute at hand has no application to the relationship between Halsey Hardwood and Spivey as shown by this record. Here, there is neither evidence nor finding of fact that Halsey Hardwood at any time sublet any part of its logging operations or other work to Spivey, nor made any contract with him for the performance of work of any kind. All the evidence tends to show, and the facts are so found by the Commission, that Spivey was cutting timber which he owned absolutely under direct purchase from the owner of the stumpage. Halsey Hardwood had no contractual rights of any kind in the stumpage. Spivey owned his own logging equipment, conducted his own logging operations and sold his logs in the open market. The firms to whom he sold the logs had no control or right of control over his mode of logging operations or disposal of logs. On this record Spivey at no time stood in the position of subcontractor to Halsey Hardwood or any other firm to whom he sold his logs, nor was Halsey Hardwood ever at any time liable, under G.S. § 97-19 or any other section of the Workmen's Compensation Act, for any injuries that may have been sustained by Spivey's employees.
It must be kept in mind that G.S. § 97-19 is not applicable to an independent contractor, Hayes v. Board of Trustees of Elon College, 224 N.C. 11, 29 S.E.2d 137, as distinguished from a subcontractor of the class designated by the statute. Beach v. McLean, 219 N.C. 521, 14 S.E.2d 515; Evans v. Tabor City Lumber Co., 232 N.C. 111, 59 S.E.2d 612. And all the more is it so that the statute does not apply to an independent employer who, as in the case of Spivey, produces or gets out raw materials of his own, like logs, and sells them in the open market to a processor-purchaser like Halsey Hardwood who has no control whatsoever over the operations of the independent employer.
It follows, then, that since the relationship of principal contractor and subcontractor never existed between Halsey Hardwood and Spivey within the meaning of *495 G.S. § 97-19, Spivey's insurance coverage may not be treated as having rested in its inception upon that relationship; and if this be so, it necessarily follows that proof of the non-existence of that relationship at some subsequent time does not, ipso facto, show a termination of the insurance coverage.
This record discloses that Lanier, agent of American Mutual, was fully apprised of the true factual relationship between Halsey Hardwood and Spivey before Spivey's coverage was effected. Therefore, if it be conceded that Lanier was mistaken in assuming that Spivey was operating under a contractual relation with Halsey Hardwood which brought him within the purview of G.S. § 97-19 (though this is not shown by the record), even so, such was nothing more than an erroneous conclusion as to the legal effect of known facts. And this is a mistake of law and not of fact, and the rule is that ordinarily a mistake of law, as distinguished from a mistake of fact, does not affect the validity of a contract. Foulkes v. Foulkes, 55 N.C. 260; Bledsoe v. Nixon, 68 N.C. 521. See also 12 Am.Jur., Contracts, Sec. 140, p. 634.
It is manifest, therefore, that the rights of American Mutual and Spivey must be determined without reference to G.S. § 97-19, wholly and solely upon the basis of the contractual relation between them as established by the findings of fact of the Industrial Commission. The findings of the Commission show that Baer, acting as agent of American Mutual, effectively bound that company as Spivey's compensation insurance carrier, and no cancellation or termination of the insuring agreement or stoppage of the payment of premiums has been made to appear. On the contrary, it affirmatively appears that the premiums were paid weekly by Spivey until after the deceased Henry Greene sustained his fatal injury. These findings support the conclusion and adjudication that American Mutual was Spivey's compensation insurance carrier and as such is liable for payment of the compensation due by reason of the death of Henry Greene.
Besides, it is noted that American Mutual admits its coverage of Spivey in the first instance. The period of admitted coverage extends from 1 February through 7 May, 1949. This includes a period of several weeks in March and April when no logs were being delivered to Halsey Hardwood. Following this stoppage there was a period of deliveries extending over a few days in May and ending 7 May. After this, Spivey again resumed deliveries in September, 1949. Meanwhile, Henry Greene was injured 19 July, 1949. Thus, by admitting coverage and acknowledging receipt of premiums and electing to keep them for the period of several weeks in March and April when no logs were being delivered to Halsey Hardwood, American Mutual attempts to ratify a portion of the insuring agreement and reject the rest. This, in no event, may it do. Ordinarily an insurance company may not ratify that part of an unauthorized contract made by an agent which is favorable to it and reject the rest. It must ratify or reject it as a whole. 44 C.J.S., Insurance, § 273, p. 1090. The rule is that ratification extends to the entire transaction. 2 Am.Jur., Agency, Sec. 223, p. 177. Therefore, if it should be conceded arguendo that the contract as made by Mr. Baer as agent of American Mutual was ineffectual for any reason to cover Spivey's operations after he stopped selling and delivering logs to Halsey Hardwood on 7 May, 1949, even so, it would seem that upon the record as here presented American Mutual ratified the contract by its election to retain premiums paid by Spivey during an earlier period while he was not delivering logs to Halsey Hardwood.
We have not overlooked the appellant's challenge to the jurisdiction of the Industrial Commission. As to this, appellant urges that the court, and not the Industrial Commission, is the proper forum for the adjudication of the question of liability, if any, of American Mutual.
The appellant's position is untenable. The Commission is specifically vested by statute with jurisdiction to hear "all questions arising under" the Compensation Act. G.S. § 97-91. This jurisdiction under the statute ordinarily includes the right and duty to hear and determine questions of fact and law respecting the existence of insurance *496 coverage and liability of the insurance carrier. See 58 Am.Jur., Workmen's Compensation, Sec. 572; Annotation, 127 A.L.R. 476, 481; 71 C.J., p. 916.
It was the legislative intent that the Industrial Commission should administer the provisions of the Workmen's Compensation Act under summary and simple procedure, distinctly its own, so as to furnish speedy, substantial, and complete relief to parties bound by the Act. G.S. § 97-77 et seq. See also Worley v. Pipes, 229 N.C. 465, 50 S.E.2d 504; Lee v. American Enka Corp., 212 N.C. 455, 193 S.E. 809; Conrad v. Cook-Lewis Foundry Co., 198 N.C. 723, 153 S.E. 266.
This record impels the conclusion that the Industrial Commission had jurisdiction to hear and determine the question of insurance coverage.
It follows from what we have said that the judgment below will be
Affirmed.