IN RE APPEAL OF WILLARD CALDWELL FROM CIVIL SERVICE COMMIS-
SION FOR CLASSIFIED EMPLOYEES OF THE CITY OF ASHEVILLE.

(Filed 29 April, 1953.)

1. **Municipal Corporations § 11f—**

Under the provisions of Chap. 1000, secs. 10a and 11, Session Laws of
1951, where the employee's appeal from order of the Civil Service Commis-
sion contains no statement of the grounds for appeal or any specific excep-
tion to the findings of fact, the appeal to the Superior Court presents the
single question whether the facts found by the Commission support its
decision.

2. **Appeal and Error § 6c (2)—**

A general exception to the judgment presents for review the single
question whether the facts found support the judgment.

3. **Municipal Corporations § 11f—**

Order of the Civil Service Commission of Asheville and judgment of the
Superior Court affirming such order *held* supported by findings of fact that
petitioner was discharged for insubordination, and therefore the order and
judgment are upheld under the provisions of Chap. 1000, sec. 10a, Session
Laws of 1951.

APPEAL by petitioner, Willard Caldwell, from *Gwyn, J.,* October Term,
1952, of BUNCOMBE.

This is a proceeding under Chapter 1000, Session Laws of 1951, known
as The Classified Employees Civil Service Act of the City of Asheville
(hereinafter referred to as the Civil Service Act), heard below on appeal
of the petitioner, an employee in the City's Street Department, from dis-
charge by Street Superintendent Greer Johnson on the ground of in-
subordination.

The matter was first heard before the Civil Service Commission for
Classified Employees of the City of Asheville (hereinafter referred to as
the Commission), on petitioner Caldwell's appeal from summary dis-
charge by Street Superintendent Johnson.

The full Commission, after hearing the testimony and evidence offered
both by the petitioner and by Street Superintendent Johnson, found facts
and rendered its decision on 21 July, 1952.

These in substance are the pertinent facts found by the Commission:

1. On the morning of 6 May, 1952, Street Superintendent Johnson
requested tractor driver Caldwell to perform certain duties. Caldwell
advised Johnson that he could not perform the duties due to the fact that
the tractor he operated the day before needed repairing. "There had
previously been an order from the Director of Public Works requiring
all employees to report any defects in the rolling stock of the City of

Asheville to the city garage when they finished the day's work. On May 5th when . . . Caldwell brought his tractor into the garage he failed to report the mechanical defect that he advised . . . Johnson about the next morning. An argument between the tractor driver and the Street Superintendent ensued and was witnessed by many employees in the City of Asheville, and Mr. Caldwell's general attitude of arrogance was prevalent all through the argument."

2. Thereupon Caldwell was relieved of his duties as tractor driver by Street Superintendent Johnson, and "after Caldwell was relieved of his duties . . . Johnson assigned another tractor driver to the task that had been assigned to Caldwell and the task was carried out without the tractor having to be repaired as had been stated by Caldwell." (The record also discloses that Street Superintendent Johnson reported the discharge to the Civil Service Commission by written report dated 16 May, 1952, as required by Section 11 of the Civil Service Act. The report sets out in detail the facts and circumstances as they appeared to Superintendent Johnson. The report also discloses that Caldwell was advised on 15 May "that he could return to work as a truck driver . . . However, Mr. Caldwell stated this was not satisfactory.")

3. ". . . Caldwell was advised by Street Superintendent Johnson to take his complaint to the City Manager if he so desired. This he did, but there is nothing in the record to show that any action was taken contrary to the action of Street Superintendent Johnson."

4. ". . . that Willard Caldwell violated Section 10 and Section 11 of House Bill 1061 of the General Session Laws of the State of North Carolina 1951 (Chapter 1000, Session Laws of 1951), and that Superintendent Greer Johnson was within his authority in relieving Mr. Caldwell of his duties in the Street Department on the morning of May 6th 1952."

Upon the foregoing findings the Commission concluded in substance: (1) "That . . . employee Caldwell was guilty at the time of insubordination and failure to do a task assigned to him in the best interest of the general public"; and (2) that Street Superintendent Johnson acted within his authority under the Civil Service Act. And thereupon it was adjudged that "The Commission . . . upholds the action of Street Superintendent Johnson in the case of Willard Caldwell, but desires to make a recommendation to the Street Superintendent, i.e., due to the fact that Mr. Caldwell has many years service with the City of Asheville, it is recommended that he be demoted rather than completely relieved of his duties with the City of Asheville. Mr. Caldwell's request for pay since May 6th 1952 is denied."

From the foregoing decision, Caldwell gave notice of appeal to the Superior Court. And pursuant to the provisions of the Civil Service Act, transcript of the record of the hearing before the Commission, and of its

findings and conclusions, was certified to the Superior Court of Buncombe County.

However, no specific exceptions or assignments of error, or statement of grounds of appeal, appear to have been filed with or included in the record on appeal to the Superior Court.

In the Superior Court, the presiding judge entered judgment affirming the order of the Civil Service Commission.

The petitioner excepted to the judgment so entered and appealed to this Court.

*Henry C. Fisher for petitioner, appellant.*

*Philip C. Cocke for Civil Service Commission of Employees of the City of Asheville, appellee.*

JOHNSON, J. Decision here is controlled by the provisions of The Classified Employees Civil Service Act of the City of Asheville, Chapter 1000, Session Laws of 1951. Pertinent to decision are these portions of the Act:

"Sec. 10. . . . Any person holding office, place, position or employment in any of the classified services and subject to the provisions of this Act, may be removed, discharged, suspended without pay, demoted, reduced in rank, or deprived of vacation privileges or other special privileges for any one or more of the following reasons:

"(a) . . ., insubordination, . . . or any other act of omission or commission in the course of the employment tending to injure the public service."

"Sec. 11. Removal. . . . The director or foreman if such authority is delegated, may orally suspend, discharge or remove a member of his department pending the confirmation of the suspension, discharge or removal by the regular appointing power under this Act, but written report of such suspension, discharge or removal shall be made to the commission. Any person so removed, suspended or discharged, may within 10 days from the time of his removal, suspension or discharge, file with the commission a written demand for an investigation, whereupon the commission shall conduct such investigation. The investigation shall be confined to the determination of the question of whether such removal, suspension or discharge was or was not made for political reasons and was or was not made in good faith for cause. After such investigation the commission may, if in its judgment the evidence is sufficient, affirm the removal, suspension or discharge, or if it shall find that the removal, suspension or discharge was made for political reasons, or was not made in good faith for cause, shall order the immediate reinstatement or re-employment of such person in the office, place, position or employment

from which such person was removed, suspended or discharged, . . . The commission upon such investigation, in lieu of affirming the removal, suspension or discharge, may modify the order of removal, suspension or discharge by directing a suspension, without pay, for a given period, and subsequent restoration of duty, grade or pay; . . .

"All investigations made by the commission . . ., pursuant to the provisions of this Section, shall be by public hearing, after reasonable notice to the accused of the time and place of such hearing, at which the accused shall be afforded an opportunity of appearing in person and by counsel, and presenting his defense. At any such hearing the testimony of all witnesses shall be taken in writing and a record made of all proceedings, including the commission's findings of fact and its final order. The final order shall be signed by not less than two commissioners indicating concurrence therein. From said final order the accused may appeal to the Superior Court of Buncombe County, which appeal shall be taken within 10 days after the entry of such order by serving the commission with a written notice of appeal, *stating the grounds thereof,* and demanding that a certified transcript of the record and of all papers on file in the office of the commission affecting or relating to such order, be filed by the commission in such court. The commission shall, within 10 days after the filing of such notice, make, certify, and file such transcript with such court. The Superior Court shall thereupon proceed to hear and determine such appeal; *provided, however, that such hearing shall be confined to the determination of whether the order of th'e removal, discharge or suspension made by the commission, was or was not made in good faith for cause, and no appeal to such court shall be taken except upon such ground or grounds."* (Italics added.)

It is noted that the petitioner's appeal from the Civil Service Commission to the Superior Court contains no statement of the "grounds" of appeal as required by Section 11 of the Civil Service Act. Nor is the appeal supported by any specific exception to any finding of fact of the Commission. Therefore the petitioner's appeal carried up for review in the Superior Court the single question whether the facts found by the Commission support the decision upholding Superintendent Johnson's discharge of the petitioner. *Greene v. Board of Education, ante,* 336; *Greene v. Spivey,* 236 N.C. 435, 73 S.E. 2d 488; *In re Sams,* 236 N.C. 228, 72 S.E. 2d 421.

And, in turn, the general exception to the judgment signed by Judge Gwyn brings here for review the single question whether the facts found support the decision upholding the discharge. *Greene v. Spivey, supra; Parsons v. Swift & Co.,* 234 N.C. 580, 68 S.E. 2d 296; *Rader v. Coach Co.,* 225 N.C. 537, 35 S.E. 2d 609.

It is manifest that both the order of the Commission and the judgment of Judge Gwyn are supported by the facts found. Chapter 1000, Sections 10 and 11, Session Laws of 1951. Therefore, the judgment below affirming the order of the Civil Service Commission will be upheld.

Affirmed.