ANGELA G. KENION, Employee, Plaintiff-Appellant,
v.
MAPLE VIEW FARM, INC., (NON-INSURED) Employer, and MAPLE VIEW MILK COMPANY, LLC, and THE HARTFORD INSURANCE COMPANY, Carrier, Defendants-Appellees.
No. COA07-1478
Court of Appeals of North Carolina
Filed August 19, 2008
This Case not for Publication
Law Offices of Kathleen G. Sumner, by Kathleen G. Sumner, for Plaintiff-Appellant.
Hedrick, Gardner, Kincheloe & Garofalo, L.L.P., by Jeffrey A. Doyle and Susan J. Vanderweert, for Employer-Defendant-Appellee Maple View Farm, Inc.
Cranfill Sumner & Hartzog LLP, by Robin H. Terry and Meredith Taylor Berard, for Defendant-Appellee Maple View Milk Company, LLC, and for The Hartford Insurance Company, Carrier-Defendant-Appellee.
McGEE, Judge.
The record in this case shows that Maple View Farm, Inc. (Defendant Farm) is a farm located in Hillsborough, North Carolina. Mr. Robert Nutter (Robert Nutter) and Mr. Russell Seibert (Mr.Seibert) each own fifty percent of Defendant Farm. Defendant Farm has roughly 300 cows, about 150 of which are milking cows. Defendant Farm's operations include growing feed for its cows, feeding its cows, and milking its cows. Defendant Farm has always employed fewer than ten employees and does not carry workers' compensation insurance.
Maple View Milk Company, LLC (Defendant Milk Company) is located about 100 yards from Defendant Farm. Mr. Roger Nutter (Roger Nutter) and Mr. Seibert each own fifty percent of Defendant Milk Company. Defendant Milk Company receives raw milk via an underground pipe running from Defendant Farm to Defendant Milk Company. Defendant Milk Company's operations include pasteurizing, bottling, and selling milk and other dairy products. Defendant Milk Company sells its processed milk to restaurants, small vendors, and grocery stores, including Harris Teeter. Defendant Milk Company carries workers' compensation coverage for its employees through a policy with Defendant The Hartford Insurance Company. Defendant Milk Company has never requested a certificate of workers' compensation insurance from Defendant Farm.
Defendant Farm and Defendant Milk Company are maintained as separate companies. The two companies have separate federal tax identification numbers, bookkeepers, employees, bank accounts, and payroll records, and file separate tax returns. The assets of the two companies have never been commingled.
Angela G. Kenion (Plaintiff) began working for Defendant Farm in the fall of 2002. Plaintiff's duties included feeding calves, assisting with birthing calves, cleaning stalls, and moving straw and hay. Plaintiff injured her back while moving bales of straw on 1 December 2005.
Plaintiff filed a workers' compensation claim against Defendant Milk Company on 29 March 2006. Plaintiff later filed amended workers' compensation claims against both Defendant Farm and Defendant Milk Company on 24 August 2006. Deputy Commissioner Myra L. Griffin (Deputy Commissioner Griffin) heard Plaintiff's claims on 25 October 2006. At the close of the testimony, all Defendants moved to dismiss Plaintiff's claims. Deputy Commissioner Griffin entered an opinion and award on 13 February 2007 dismissing Plaintiff's claims. Plaintiff appealed Deputy Commissioner Griffin's opinion and award to the North Carolina Industrial Commission (the Commission).
The Commission entered an opinion and award on 24 August 2007 affirming, with modifications, Deputy Commissioner Griffin's prior opinion and award. The Commission first concluded that Defendant Farm did not fall within the jurisdiction of the Workers' Compensation Act because Defendant Farm was engaged in agricultural services and employed fewer than ten employees.[1]See N.C. Gen. Stat. § 97-2(1) (2007); N.C. Gen. Stat. § 97-13(b) (2007). The Commission further concluded that Defendant Milk Company was not liable as Plaintiff's "statutory employer" under N.C. Gen. Stat. § 97-19 because Defendant Milk Company had not subcontracted to Defendant Farm any service or work that Defendant Milk Company was legally obligated to perform for another entity. The Commission then dismissed Plaintiff's claims. Plaintiff appeals.
N.C. Gen. Stat. § 97-19 provides in part:
Any principal contractor, intermediate contractor, or subcontractor who shall sublet any contract for the performance of any work without requiring from such subcontractor or obtaining from the Industrial Commission a certificate, issued by a workers' compensation insurance carrier . . . stating that such subcontractor has complied with G.S. 97-93 hereof, shall be liable . . . to the same extent as such subcontractor would be if he were subject to the provisions of this Article for the payment of compensation and other benefits under this Article on account of the injury or death of any employee of such subcontractor due to an accident arising out of and in the course of the performance of the work covered by such subcontract.
N.C. Gen. Stat. § 97-19 (2007). Plaintiff argues that the Commission erred by concluding that Defendant Milk Company was not Plaintiff's "statutory employer" under N.C.G.S. § 97-19. "Because this raises the jurisdictional question of whether an employment relationship within the [Workers' Compensation] Act existed" between Plaintiff and Defendant Milk Company at the time of Plaintiff's injury, "the jurisdictional facts found by the Commission, though supported by competent evidence, are not binding on this Court." Cook v. Norvell-Mackorell Real Estate Co., 99 N.C. App. 307, 309, 392 S.E.2d 758, 759 (1990). "Instead, we are required to review the evidence of record and make independent findings of jurisdictional facts established by the greater weight of the evidence with regard to [P]laintiff's employment status." Id.
N.C.G.S. § 97-19 only creates liability in a principal contractor if two conditions are met. "First, the injured employee must be working for a subcontractor doing work which has been contracted to it by a principal contractor. Second, the subcontractor does not have workers' compensation insurance coverage covering the injured employee." Rich v. R.L. Casey, Inc., 118 N.C. App. 156, 159, 454 S.E.2d 666, 667, disc. review denied, 340 N.C. 360, 458 S.E.2d 190 (1995). It is undisputed that Defendant Farm does not have workers' compensation insurance. Our inquiry therefore focuses on the first element of N.C.G.S. § 97-19.
Plaintiff contends that Defendant Milk Company is a principal contractor of Harris Teeter, in that Harris Teeter contracts with Defendant Milk Company for the purchase of milk. Plaintiff further contends that Defendant Farm is a subcontractor of Defendant Milk Company, in that Defendant Milk Company subcontracts with Defendant Farm to provide the milk that Defendant Milk Company sells to Harris Teeter. According to Plaintiff, this business arrangement satisfies the requirement that Plaintiff was "working for a subcontractor doing work which ha[d] been contracted to it by a principal contractor." Rich, 118 N.C. App. at 159, 454 S.E.2d 667.
Roger Nutter testified before Deputy Commissioner Griffin that Defendant Milk Company does not have an ongoing contract with Harris Teeter to provide milk to Harris Teeter. Rather, according to Roger Nutter, the dairy manager for Harris Teeter calls Defendant Milk Company each week and places an order. Defendant Milk Company then delivers the requested quantity of milk to Harris Teeter. Defendant Milk Company has similar arrangements with its other customers.
Robert Nutter testified that Defendant Farm currently sells all the milk it produces to Defendant Milk Company. However, according to Robert Nutter, Defendant Farm has no written or oral contract with Defendant Milk Company regarding the sale of milk. Mr. Seibert similarly testified that there is no contract or exclusivity agreement between Defendant Farm and Defendant Milk Company, and that Defendant Farm can sell its milk to any purchaser it chooses. In fact, Defendant Farm previously sold milk to purchasers other than Defendant Milk Company. Further, according to Mr. Seibert, Defendant Milk Company is free to purchase its milk from sources other than Defendant Farm.
Plaintiff argues that although Defendant Milk Company and Harris Teeter have no written contract, the evidence is sufficient to establish an implied contract for Defendant Milk Company to supply milk to Harris Teeter on a weekly basis according to Harris Teeter's needs. Plaintiff further argues that although Defendant Milk Company and Defendant Farm have no written contract, the evidence is sufficient to establish an implied subcontract for Defendant Farm to provide the milk necessary for Defendant Milk Company to fulfil its implied contract with Harris Teeter and its other customers. Even assuming arguendo that such contracts may be implied from the testimony in this case, we find that N.C.G.S. § 97-19 does not apply here because a contractor-subcontractor relationship did not exist between Defendant Milk Company and Defendant Farm.
In Greene v. Spivey, 236 N.C. 435, 73 S.E.2d 488 (1952), the plaintiff's decedent was employed by Spivey. Id. at 437, 73 S.E.2d at 490. Spivey's business operations included purchasing standing trees, cutting the trees, and selling the logs in the open market. Id. At various times, Spivey sold his entire output of logs to the Halsey Hardwood Company. Id. at 438, 73 S.E.2d at 490. However, Spivey "owned his own equipment, hired, fired, and paid his own employees, worked or stopped when and as he saw fit, and kept his own records." Id. at 437-38, 73 S.E.2d at 490. Further, Halsey Hardwood Company "had no voice in or control over the management of Spivey's operations in any way or manner[.]" Id. at 438, 73 S.E.2d at 490. The plaintiff's decedent died while felling trees in the course of his employment with Spivey. Id. at 437, 73 S.E.2d at 490. Our Supreme Court held that N.C.G.S. § 97-19 did not apply to these facts:
[T]here is [no evidence] that Halsey Hardwood at any time sublet any part of its logging operations or other work to Spivey, nor made any contract with him for the performance of work of any kind. All the evidence tends to show . . . that Spivey was cutting timber which he owned absolutely. . . . Halsey Hardwood had no contractual rights of any kind in the stumpage. Spivey owned his own logging equipment, conducted his own logging operations and sold his logs in the open market. The firms to whom he sold the logs had no control or right of control over his mode of logging operations or disposal of logs. On this record Spivey at no time stood in the position of subcontractor to Halsey Hardwood . . ., nor was Halsey Hardwood ever at any time liable, under G.S. 97-19 . . ., for any injuries that may have been sustained by Spivey's employees.
. . . . [N.C.G.S. § 97-19] does not apply to an independent employer who, as in the case of Spivey, produces or gets out raw materials of his own, like logs, and sells them in the open market to a processor-purchaser like Halsey Hardwood who has no control whatsoever over the operations of the independent employer.
Id. at 443-44, 73 S.E.2d at 494.
Likewise, in the present case, all of the evidence in the record tends to show that Defendant Farm was engaged in the business of milking cows that it owned exclusively, and selling its raw milk in the open market. There is no evidence that Defendant Milk Company had any interest whatsoever in Defendant Farm's cows or other assets, or that Defendant Milk Company had any control over Defendant Farm's operations. The evidence demonstrates that Defendant Farm merely sold raw materials to Defendant Milk Company, and Defendant Milk Company in turn used those raw materials to create a product and sell that product on the open market. Under Greene, a contractor-subcontractor relationship did not exist between Defendant Milk Company and Defendant Farm within the meaning of N.C.G.S. § 97-19.
Plaintiff argues that a contractor-subcontractor relationship can exist between a vendee and vendor of raw materials, and contends that Masood v. Erwin Oil Co., 181 N.C. App. 424, 639 S.E.2d 118, aff'd by an equally divided Court, 361 N.C. 579, 650 S.E.2d 595 (2007) (per curiam) (Hudson, J., not participating),controls our decision in this case. We note that the North Carolina Supreme Court affirmed our Court's decision in Masood by a split vote, with Justice Hudson not participating. Therefore, while we may treat Masood as persuasive precedent, it is not binding on our Court. See Masood, 361 N.C. at 579, 650 S.E.2d at 595 (stating that our Court's opinion in Masood was "left undisturbed without precedential value").
Even were Masood binding on this Court, we find Masood distinguishable from the current case. In Masood, the evidence demonstrated that Erwin Oil had a contract with Amoco. Under this contract, Erwin Oil was obligated to purchase Amoco gasoline and to resell the Amoco gasoline at its retail sites. Id. at 427, 639 S.E.2d at 120-21. Tri-Star, the plaintiff's employer, leased a gas station and equipment from Erwin Oil. Id. at 425-26, 639 S.E.2d at 119-20. Under this lease, Tri-Star was obligated to maintain and operate the gas station. Id. at 428, 639 S.E.2d at 121.
On these facts, our Court held that Erwin Oil was the plaintiff's "statutory employer" under N.C.G.S. § 97-19. Id. Our Court found that because Erwin Oil had a legal obligation to sell Amoco gasoline at retail outlets, and in turn contracted with Tri-Star to perform this function, Erwin Oil and Tri-Star had a contractor-subcontractor relationship. Id. Our Court specifically noted that the fact that Erwin Oil and Tri-Star also had a landlord-tenant relationship did not preclude the two companies from also having a contractor-subcontractor relationship. Id.
We need not decide whether a vendee and vendor of raw materials may also have a contractor-subcontractor relationship, because it is clear that such a relationship did not exist in the present case. Unlike in Masood, where Tri-Star performed the exact same duty owed by Erwin Gas to Amoco, Defendant Farm here did not perform the exact same duty owed by Defendant Milk Company to Harris Teeter. Assuming that Defendant Milk Company had a contractual obligation to provide pasteurized, consumer-ready milk to Harris Teeter, it did not subcontract this function to Defendant Farm. Rather, Defendant Farm raised and milked cows, and provided raw milk to Defendant Milk Company. This raw milk, along with bottles, caps, and other materials, was just one ingredient that Defendant Milk Company processed to create its own product that it then sold to Harris Teeter.
We find that Defendant Milk Company was not Plaintiff's "statutory employer" under N.C.G.S. 97-19. We therefore hold that the Commission did not err by dismissing Plaintiff's claims for workers' compensation benefits.
Affirmed.
Judges ELMORE and JACKSON concur.
Report per Rule 30(e).
NOTES
[1] Although Plaintiff has assigned error to the Commission's conclusion that Defendant Farm did not fall within the jurisdiction of the Workers' Compensation Act, Plaintiff has not set out and argued this assignment of error in her brief. Plaintiff's assignment of error is therefore deemed abandoned. See N.C.R. App. P. 28(b)(6).