JOSE CLEMENTE HERNANDEZ GONZALEZ, EMPLOYEE, PLAINTIFF v. JIMMY WORRELL D/B/A WORRELL CONSTRUCTION, NONINSURED, AND PATRICK LAMM AND CO., LLC, EMPLOYER, AND TRAVELERS INDEMNITY CO., BUILDERS MUTUAL INSURANCE CO., SCOTT INSURANCE AGENCY, SWISS REINSURANCE COMPANY, CINCINNATI INSURANCE CO., CARRIERS, DEFENDANTS

No. COA11-1405

(Filed 19 June 2012)

**1. Workers' Compensation—improper cancellation of policy— failure to show statutory procedure completed**

The Industrial Commission did not err in a workers' compensation case by concluding that defendant Cincinnati had not properly cancelled a policy that Worrell held with it, thus making the policy still in effect on the date of plaintiff's accident. Cincinnati was unable to produce evidence showing that it completed, not just began, the cancellation process described in N.C.G.S. § 58-36-105(b).

**2. Workers' Compensation—policy did not lapse—failure to send notice of nonrenewal**

The Industrial Commission did not err in a workers' compensation case by concluding that Worrell's policy with Cincinnati did not lapse and was still effective once Worrell paid for the renewal. Cincinnati did not contend that it sent a notice of nonrenewal to Worrell 45 days prior to the 6 September 2008 expiration date of his policy.

**3. Workers' Compensation—temporary total disability benefits—renewal of policy—acceptance of premiums**

The Industrial Commission did not err in a workers' compensation case by concluding that Worrell's policy with Cincinnati was renewed when Scott accepted the premium payment and thus that policy was in effect on the date of plaintiff's accident. Under the circumstances, Worrell was justified in believing that Cincinnati had conferred on Scott the power to accept renewal payments on its behalf since Cincinnati permitted Scott to sell its policies to Worrell for years. Accordingly, Cincinnati was liable to plaintiff for his temporary disability benefits.

**4. Workers' Compensation—statutory employer—failure to get certificate of insurance for project**

The Industrial Commission did not err in a workers' compensation case by addressing the issue of plaintiff's statutory employer under N.C.G.S. § 97-19 or by finding that Builders Mutual would be liable in the event that Cincinnati defaulted on payments to plaintiff. Lamm did not get a certificate of insurance from Worrell specifically for this project in compliance with the statute. The statute explicitly held Lamm liable to the same extent as Cincinnati due to its failure to comply with N.C.G.S. § 97-19.

Judge STEELMAN concurring in part and dissenting in part.

Appeal by Defendant Cincinnati Insurance Company and cross-appeal by Defendants Patrick Lamm and Co., LLC and Builders Mutual Insurance Co. from opinion and award entered 5 August 2011 by the North Carolina Industrial Commission. Heard in the Court of Appeals 25 April 2012.

*Thomas and Farris, P.A., by Albert S. Thomas, Jr. and Allen G. Thomas; Blake Law Firm, P.L.L.C., by Paul N. Blake, III; and Morrison Law Firm, PLLC, by B. Perry Morrison, Jr., for Plaintiff.*

*Lewis & Roberts, PLLC, by Jeffrey A. Misenheimer, Sarah C. Blair, and Melissa K. Walker, for Defendant Patrick Lamm and Co., LLC and Builders Mutual Insurance Co.*

*Hedrick, Gardner, Kincheloe & Garofalo, L.L.P., by Shelley W. Coleman and M. Duane Jones, for Defendant Travelers Indemnity Co.*

*Womble Carlyle Sandridge & Rice, by Philip J. Mohr, for Defendant Cincinnati Insurance Co.*

BEASLEY, Judge.

Defendant Cincinnati Insurance Co. (Cincinnati) appeals from a 5 August 2011 opinion and award of the North Carolina Industrial Commission (the Commission). Defendants Patrick Lamm and Co., LLC (Lamm) and Builders Mutual Insurance (Builders Mutual) cross-appeal from the same decision. For the following reasons, we affirm.

Jose Clemente Hernandez Gonzalez (Plaintiff) began to work for Jimmy Worrell d/b/a Worrell Construction (Worrell) in 1999. Plaintiff initially worked as a carpenter's helper, but over time learned the skills needed for a promotion first to carpenter, and then to crew leader. On the morning of 24 March 2009, Plaintiff rode as a passenger in Worrell's vehicle, along with several other employees of Worrell's, to a job site at Lake Gaston in Virginia. Lamm was the general contractor for this work assignment. On the way home at the end of the work day, another employee drove Worrell's vehicle off the road and into a tree. Plaintiff was seated in the front passenger seat at the time of the accident. Plaintiff was severely injured in the accident and is now a quadriplegic, totally dependent on others for all daily functions. Plaintiff has been completely disabled from work of any kind since the accident.

On 22 May 2009, Plaintiff filed a Form 18 with the Commission reporting his injury and a Form 33 requesting that his claim be assigned for hearing. The matter was heard before Deputy Commissioner Adrian Phillips on 6, 7 and 8 April and 26 July 2010. Deputy Commissioner Phillips filed an opinion and award on 13

December 2010 finding Cincinnati and Lamm jointly and severally liable to Plaintiff for his injury, and ordering, *inter alia*, that Cincinnati and Builders Mutual (Lamm's insurance carrier) pay Plaintiff temporary disability benefits beginning 24 March 2009 and continuing until further order of the Commission.

Lamm and Builders Mutual filed a motion for reconsideration on 14 December 2010, requesting that Deputy Commissioner Phillips modify the award. Cincinnati filed a motion for reconsideration as well, arguing that Cincinnati should not be liable because it had cancelled its policy with Worrell and that Lamm should remain liable for Plaintiff's injuries so his motion should be denied. Deputy Commissioner Phillips filed an order on 7 January 2011 stating that the 13 December 2010 opinion and award would stand as entered. On 9 January 2011, Lamm and Builders Mutual appealed to the Full Commission. Cincinnati also filed a notice of appeal on 14 January 2011. The matter was reviewed by the Commission on 2 June 2011. In an opinion and award filed 5 August 2011, the Commission affirmed Deputy Commissioner Phillips' decision with minor modifications. The Commission ordered that Cincinnati pay Plaintiff disability benefits, and that Builders Mutual would only become liable for these payments in the event that Cincinnati defaults. Cincinnati filed a notice of appeal of the Commission's decision with this Court on 24 August 2011. Lamm and Builders Mutual filed a cross-appeal on 30 August 2011.

## I. Standard of Review

While reviewing decisions of the Commission, "appellate courts must examine whether any competent evidence supports the Commission's findings of fact and whether [those] findings . . . support the Commission's conclusions of law. The Commission's findings of fact are conclusive on appeal when supported by such competent evidence, even though there is evidence that would support findings to the contrary." *McRae v. Toastmaster, Inc.*, 358 N.C. 488, 496, 597 S.E.3d 695, 700 (2004) (citations, quotations, and brackets omitted). The Commission's conclusions of law are reviewed *de novo*. *Lewis v. Sonoco Prods. Co.*, 137 N.C. App. 61, 68, 526 S.E.2d 671, 675 (2000).

## II. Cincinnati's Appeal

[1] We first address the issues raised by Cincinnati's appeal of the Commission's decision. Cincinnati argues that the Commission erred in concluding that it had not properly cancelled the policy that

Worrell held with it and so the policy was still in effect on the date of Plaintiff's accident.[1] We disagree.

The Commission concluded that Cincinnati's policy was still in effect at the time of Plaintiff's accident and thus Cincinnati was the carrier on the risk for Worrell's employees, including Plaintiff. In so concluding, the Commission relied on N.C. Gen. Stat. § 58-36-105(b) (2011), which provides that any cancellation of workers' compensation insurance "is not effective unless written notice of cancellation has been given by registered or certified mail, return receipt requested, to the insured not less than 15 days before the proposed effective date of cancellation . . . no cancellation by the insurer shall be effective unless and until such method is employed and *completed*." (emphasis added).

Cincinnati asserts that it sent Worrell a notice of cancellation which stated the policy would be cancelled as of 21 November 2007. Although Cincinnati contends that it complied with the statute by sending the notice of cancellation by certified mail with return receipt, it could not produce evidence that the process was ever completed. Cincinnati was unable to produce the "green card" that would have been attached to the envelope and returned with the signature of Worrell, or whoever received the letter, providing proof of service. An employee of the United States Postal Service stated, through deposition testimony, that she ran a search of the tracking number of this mailing and saw that it was delivered on 5 November 2007, but could not retrieve a "green card" to verify a signature of acceptance. Further, the employee stated that if a person sent certified mail with a return receipt they would get a "green card" back.

Based on the foregoing, we find that the Commission did not err in concluding that Worrell's policy with Cincinnati was not properly cancelled because Cincinnati was unable to produce evidence showing that it *completed*, not just began, the cancellation process described in N.C. Gen. Stat. § 58-36-105(b).

[2] Cincinnati also argues that even if the policy was not properly cancelled on 21 November 2007, it expired on its own terms on 6 September 2008 and so was not in effect when Plaintiff was injured. The Commission concluded that Worrell's policy with Cincinnati was renewed because Cincinnati did not send a non-renewal notice to

---

1. The Commission also found that Plaintiff was covered under Worrell's insurance policy on the date of the accident. Cincinnati does not appeal that finding so we need not address it here.

Worrell 45 days prior to renewal as required by N.C. Gen. Stat. § 58-36-110(b) and Worrell paid the premium for renewal to the Scott Insurance Agency (Scott) to renew his policy for the 2008-09 period, as he had done for the years prior.

N.C. Gen. Stat. § 58-36-110 provides guidelines for how an insurer may give notice to its insured of nonrenewal of a policy. The statute states that "any nonrenewal attempted or made that is not in compliance with this section is not effective." N.C. Gen. Stat. § 58-36-110(a) (2011). For a policy such as Worrell's, that has been written for a term of one year or less, notice may be given "at the policy's expiration date by mailing written notice of nonrenewal to the insured not less than 45 days prior to the expiration date of the policy." N.C. Gen. Stat. § 58-36-110(b) (2011). Cincinnati argues that § 58-36-110(b) does not apply here because the policy lacks a provision that compels renewal unless a notice of nonrenewal is sent. *See Lingerfelt v. Advance Transportation, Inc.*, (COA11-983, February 7, 2012) (unpublished decision) (declining to apply § 58-36-100(b) where "the parties have not manifested a mutual assent to a term or condition specifically regarding renewal in the negotiated policy.")

However, a close reading of Worrell's 2007-08 policy with Cincinnati shows that it contains a provision almost identical to the statute. In the North Carolina Amended Coverage Endorsement, section D(3)(a), it states that Cincinnati may refuse to renew the policy and "[i]f this policy is for a term of one year or less, [Cincinnati] must provide [the insured] with notice of nonrenewal at least 45 days prior to the expiration date of the policy." Cincinnati does not contend that it sent a notice of nonrenewal to Worrell 45 days prior to the 6 September 2008 expiration date of his policy. Therefore we uphold the Commission's conclusion that Worrell's policy with Cincinnati did not lapse and so was still effective once Worrell paid for the renewal.

[3] Cincinnati further argues that the payment from Worrell to Scott had "no effect on Cincinnati" because Scott was not Cincinnati's agent. The record shows that Scott acted as producer for the insurance policies between Worrell and Cincinnati from 2005-08. Worrell purchased all of these policies from Scott, and went through Scott to comply with Cincinnati's audit requests. Thus, Scott had apparent authority to bind Cincinnati to an insurance agreement with Worrell.

An agent's apparent authority is that authority which the principal has held the agent out as possessing or which he has permitted the agent to represent that he possesses. . . . A principal's liability

in any particular case must be determined by what authority the third person in the exercise of reasonable care was justified in believing that the principal had, under the circumstances, conferred upon his agent.

*Ward v. Durham Life Ins. Co.*, 325 N.C. 202, 212, 381 S.E.2d 698, 703 (1989) (internal citations, brackets, and quotations omitted). Cincinnati permitted Scott to sell its policies to Worrell for years, and to bind Cincinnati based on those sales. Under the circumstances, Worrell was justified in believing that Cincinnati had conferred on Scott the power to accept renewal payments on its behalf. Thus, we affirm the Commission's conclusion that Worrell's policy with Cincinnati was renewed when Scott accepted the premium payment and thus that policy was in effect on the date of Plaintiff's accident. Accordingly, Cincinnati is liable to Plaintiff for his temporary disability benefits.

### III. Lamm's Appeal

**[4]** We now address the issues raised by Lamm's appeal of the Commission's decision. Lamm argues that the Commission improperly addressed the issue of Plaintiff's statutory employer under N.C. Gen. Stat. § 97-19 and erred by finding that Builders Mutual would be liable in the event that Cincinnati defaulted on payments to Plaintiff. We disagree.

Pursuant to N.C. Gen. Stat. § 97-19 (2011),

> [a]ny principal contractor, intermediate contractor, or subcontractor who shall sublet any contract for the performance of any work without requiring from such subcontractor or obtaining from the Industrial Commission a certificate, issued by a workers' compensation insurance carrier, or a certificate of compliance issued by the Department of Insurance to a self-insured subcontractor, stating that such subcontractor has complied with G.S. 97-93 hereof, shall be liable . . . to the same extent as such subcontractor would be if he were subject to the provisions of this Article for the payment of compensation and other benefits under this Article on account of the injury or death of any employee of such subcontractor due to an accident arising out of and in the course of the performance of the work covered by such subcontract.

The Commission found that Lamm was the general contractor for the job that Plaintiff was working on when injured on 24 March 2009. Lamm did not get a certificate of insurance from Worrell specifically

for this project in compliance with the statute. Instead, Lamm relied on a certificate of insurance that Worrell had produced for an earlier job. Based on these factual findings, the Commission concluded Lamm became liable to the same extent as the subcontractor under § 97-19 when it failed to obtain the certificate of insurance for the project.

Lamm first contends that the Commission should not have addressed this issue because Worrell, the subcontractor, was found to have workers' compensation insurance covering Plaintiff. For this assertion, Lamm relies on *Patterson v. Markham & Assocs.*, 123 N.C. App. 448, 474 S.E.2d 400 (1996). In *Patterson,* this Court held that for a principal contractor to become a statutory employer under § 97-19, (i) the injured employee must be working for a subcontractor that is doing work for a principal contractor, and (ii) the subcontractor must not have workers' compensation insurance which covers the injured employee. *Id.* at 452, 474 S.E.2d at 402. Because the subcontractor in *Patterson* had insurance that covered the injured employee, we held that the principal contractor could not be held liable as a statutory employer. *Id.* at 453-54, 474 S.E.2d at 403.

*Patterson* is easily distinguishable from the case *sub judice.* In *Patterson* there was evidence that when the injured employee began work on the principal contractor's project, the principal contractor received a certificate of insurance covering that employee from the subcontractor. *Id.* Thus, the principal contractor in *Patterson* fully complied with § 97-19. Here, it is undisputed that Lamm did not receive a certificate of insurance from Worrell for the project that Plaintiff was working on when injured, and consequently Lamm did not comply with § 97-19. Accordingly, *Patterson* is not applicable here.

Lamm also argues that holding Builders Mutual liable in the event that Cincinnati defaults on its payments to Plaintiff is contrary to both the legislative intent of the Workmen's Compensation Act and public policy. This argument is unavailing. The statute explicitly holds Lamm liable to the same extent as Cincinnati due to its failure to comply with § 97-19. The application of the terms of a statute cannot be said to be contrary to legislative intent. Further, Lamm contends that the Commission's award could entice Cincinnati to intentionally default to transfer its liability to Builders Mutual. This argument is similarly meritless, as Lamm—and thus by extension its insurance carrier Builders Mutual—is liable to the same extent as Cincinnati under the statute. Having to compensate Plaintiff due to that liability would not be contrary to public policy.

GONZALEZ v. WORRELL

[221 N.C. App. 351 (2012)]

Affirmed.

Judge CALABRIA concurs.

Judge STEELMAN concurs in part and dissents in part.

STEELMAN, Judge, concurring in part and dissenting in part.

I fully concur with the first portion of the majority opinion holding that plaintiff's employer had worker's compensation insurance through Cincinnati Insurance Company on the date of the accident. I must respectfully dissent from the portion of the majority opinion affirming the holding of the Industrial Commission that Lamm was a statutory employer pursuant to N.C. Gen. Stat. § 97-19, and that its worker's compensation carrier, Builders Mutual Insurance Company is secondarily liable.

The purpose of N.C. Gen. Stat. § 97-19 was described in the case of *Greene v. Spivey*, 236 N.C. 435, 73 S.E.2d 488 (1952):

The manifest purpose of this statute, enacted as an amendment to the original Workmen's Compensation Act, is to protect employees of irresponsible and uninsured subcontractors by imposing ultimate liability on principal contractors, intermediate contractors, or subcontractors, who, presumably being financially responsible, have it within their power, in choosing subcontractors, to pass upon their financial responsibility and insist upon appropriate compensation protection for their workers.

*Id.* at 443, 73 S.E.2d at 494.

Thus, the purpose of N.C. Gen. Stat. § 97-19 is to make sure that the statutorily mandated worker's compensation insurance is in effect for all workers, by placing the burden upon the principal contractor to make sure that its subcontractors have the required insurance. The mechanism by which a principal contractor can protect itself from becoming a statutory employer is by obtaining a certificate of insurance.

The issue presented in the instant case is whether the certificate of insurance or the fact that the subcontractor actually had insurance that covered the plaintiff's injury is controlling in determining whether Lamm is liable as a statutory employer. Clearly, Lamm failed to obtain the certificate of insurance for the particular job upon which the plaintiff was injured. *Robertson v. Hagood Homes, Inc.,*

160 N.C. App. 137, 147, 584 S.E.2d 871, 877 (2003) ("Nor was the defendant's act of requiring a certificate for the first contract that they sublet to [the subcontractor] sufficient to demonstrate compliance with G.S. § 97-19 as regards the later contract."). However, this does not end our inquiry.

> G.S. 97-19 applies only when two conditions are met. First, the injured employee must be working for a subcontractor doing work which has been contracted to it by a principal contractor. Second, the subcontractor does not have workers' compensation insurance coverage covering the injured employee. When these two conditions are met, the principal contractor becomes liable to the subcontractor's employee for payment of workers' compensation benefits.

*Rich v. R. L. Casey, Inc.*, 118 N.C. App. 156, 159, 454 S.E.2d 666, 667 (1995) (citation omitted); *accord Patterson v. Markham & Assocs.*, 123 N.C. App. 448, 452, 474 S.E.2d 400, 402 (1996).

These cases clearly hold that for a principal contractor to be liable as a statutory employer under N.C. Gen. Stat. § 97-19, the subcontractor must have no worker's compensation insurance. The certificate of insurance discussed in the statute is simply a means by which a principal contractor may protect itself from liability as a statutory employer, but is not in and of itself determinative of liability. Unless the subcontractor is not insured, there is no liability.

*Rich* and *Patterson* clearly state the applicable principles in their two-part test. This court is bound by these holdings. *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 36–37 (1989). These cases enunciate specific principles of law, which are not dependent upon the facts of those cases.

I would reverse the holding of the Industrial Commission, imposing liability upon Lamm and Builders Mutual.